IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**RONNIE RUIZ**,

    Plaintiff,

vs.                                                                                  No. CIV 05-0666 MCA/WDS

**DOLLAR TREE STORES, INC.**,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant *Dollar Tree's 12(b)(6) Motion and Supporting Memorandum to Dismiss Plaintiff's Implied Covenant of Good Faith and Fair Dealing and Wrongful Termination Claims* [Doc. 4] filed on July 7, 2005. Having considered the parties' submissions, the relevant law, and being fully advised in the premises, the Court grants Defendant's motion and dismisses Plaintiff's wrongful termination claim as well as his claim for emotional distress or other tort damages relating to the alleged violation of an implied covenant of good faith and fair dealing. The result of the Court's ruling is not to dismiss this action in its entirety, however, as Plaintiff's claims for breach of express and implied contracts, as well as his claim for contract-related damages relating to the alleged violation of an implied covenant of good faith and fair dealing, remain pending in this action.

I. **BACKGROUND**

On June 15, 2005, Plaintiff filed a civil action against Defendant alleging federal jurisdiction based on diversity of citizenship. Plaintiff's *Complaint* alleges that Defendant committed several violations of New Mexico law in connection with the termination of his employment. Specifically, Plaintiff alleges that Defendant breached an express contract of employment (Count 1), breached an implied contract of employment (Count 2), breached an implied covenant of good faith and fair dealing relating to the parties' employment contract (Count 3), and wrongfully terminated his employment in violation of a public policy expressed in New Mexico's Criminal Offender Employment Act (COEA), N.M. Stat. Ann. §§ 28-2-1 to 28-2-6 (Michie 2004) (Count 4).

The factual basis for these alleged violations of New Mexico law is as follows. Plaintiff's *Complaint* alleges that he began working for a discount store chain named Greenbacks, Inc. as a part-time stocker in November 2001. At the time he applied for employment with Greenbacks, Inc., Plaintiff claims he disclosed a prior felony conviction dating from 1995 on his employment application. Plaintiff also claims that he disclosed his prior felony conviction again approximately four months later while being interviewed for a promotion to an assistant manager position. Notwithstanding these disclosures, the management of Greenbacks, Inc. allegedly decided to promote him to the assistant-manager position and then to a store-manager position.

According to Plaintiff's *Complaint*, Defendant Dollar Tree Stores, Inc. took over the Greenbacks, Inc. stores in June 2003, and Plaintiff remained with the company as a store

manager. Defendant allegedly assured Plaintiff and other store managers that they would keep their management positions but that there would be some changes in the locations to which they were assigned. In accordance with these assurances, Plaintiff claims he was given Defendant's employment handbook, which he signed, and then Defendant transferred Plaintiff to other store locations where he performed successfully. Eventually, Plaintiff obtained the position of Store Display Coordinator and was issued a laptop computer, credit card, and formal training for this position. He alleges that he continued to successfully perform his job.

While on a store-expansion assignment in Sacramento, California, on or about July 27, 2004, Plaintiff claims one of Defendant's district managers and a human-resource representative summoned him to their office without notice and asked him if there was anything about his past that they would like to tell him. Plaintiff claims he did not understand what they were asking about and answered "no." The human-resource representative is alleged to have then accused Plaintiff of failing to disclose his prior felony conviction and ordered him to return to his hotel room.

After waiting in his hotel room for three hours, the human-resource representative allegedly called Plaintiff and informed him that the company had received an anonymous tip that Plaintiff's name appeared on New Mexico's sex-offenders list. According to Plaintiff's *Complaint*, Defendant then terminated his employment with the company and asked him to turn over his laptop computer, company manuals, and credit card.

## II. ANALYSIS

### A. Standard of Review.

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted at any time. See Fed. R. Civ. P. 12(h)(2). Dismissal on these grounds may occur *sua sponte* or upon a defendant's motion. See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001) (concluding that "sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts"). When requested in a defendant's motion, dismissal under this rule is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). *Sua sponte* dismissal in this context is only appropriate when it is patently obvious that the plaintiff cannot prevail on the facts alleged, and allowing an opportunity to amend would be futile. See Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir.1991); Curley, 246 F.3d at 1284.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991). Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. GFF Corp., 130 F.3d at 1384. "In addition to the complaint, the [C]ourt may consider

documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002). Although Plaintiffs' pleadings are to be liberally construed, mere conclusory allegations without supporting factual averments will not suffice. See Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995).

### B. Plaintiff's Claim for Emotional Distress or Other Tort Damages Arising from the Breach of an Implied Covenant of Good Faith and Fair Dealing

Defendant moves to dismiss Plaintiff's claim for emotional distress or other tort damages arising from the breach of an implied covenant of good faith and fair dealing alleged in Count 3 of the *Complaint*. Defendant contends that Plaintiff is not entitled to such damages because the New Mexico Supreme Court has held that "tort remedies are not available for breach of the implied covenant in an employment contract." Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 438-40, 872 P.2d 852, 856-58 (1994). Defendant also cites a number of New Mexico authorities which have rejected emotional-distress damages arising from a breach of an employment contract, see, e.g., Martinez v. Northern Rio Arriba Elec. Co-op, Inc., 2002-NMCA-083, ¶ 22, 132 N.M. 510, 51 P.3d 1164, and which have distinguished the breach of an implied covenant in an employment contract from the tort of retaliatory discharge, see, e.g., Kropinak v. ARA Health Servs., Inc., 2001-NMCA-081, ¶¶ 11-13, 131 N.M. 128, 33 P.3d 679.

Plaintiff cites no contrary authority showing that emotional distress or other tort damages are available under New Mexico law for breach of the implied covenant of good

faith and fair dealing in an employment contract. He only points out that his claim for breach of an implied covenant should not be dismissed in its entirety because, even under the law cited by Defendant, he may still recover contract damages for such a claim.

The Court agrees with Plaintiff that his claim for breach of an implied covenant of good faith and fair dealing should not be dismissed in its entirety at this juncture. As Plaintiff has not shown any viable basis for collecting emotional distress or other tort damages on this claim, however, the Court agrees with Defendant that this aspect of his breach of implied covenant of good faith and fair dealing is subject to dismissal under Fed. R. Civ. P. 12(b)(6).

The Court is not persuaded that such a partial dismissal is contrary to the requirements of Fed. R. Civ. P. 12(b)(6). Although it is true that the Court cannot dismiss Plaintiff's pleading *in its entirety* based on the presence of a deficient legal theory if there are other theories in the pleading which remain viable, see, e.g., Barrett v. Tallon, 30 F.3d 1296, 1299 (10th Cir. 1994), this rule does not necessarily prevent the Court from granting a motion to dismiss some claims from the *Complaint* while the action remains pending as to other claims, see, e.g., Lowe v. Town of Fairland, 143 F.3d 1378, 1379-80 (10th Cir. 1998).

**C.    Plaintiff's Claim for Wrongful Termination Arising from Public Policy Expressed in the Criminal Offender Employment Act**

Defendant also moves to dismiss Plaintiff's wrongful termination claim on the grounds that the Criminal Offender Employment Act (COEA) does not apply to private employers and does not express a clear mandate of public policy that would give rise to a

cause of action for retaliatory discharge in this context.  In support of its motion, Defendant points out that the operative language of this statute places no restrictions on employment practices in the private sector and only applies to state actors "in determining eligibility for employment with the state or any of its subdivisions or for a license, permit, certificate or other authority to engage in any regulated trade, business or profession."  N.M. Stat. Ann. § 28-2-3.  Thus, Defendant claims that the COEA does not provide Plaintiff with any rights or remedies against a private employer.

Plaintiff responds that he is not invoking the specific rights or remedies available to persons who apply for public employment or who apply for licenses, permits, or certificates issued by state regulators.  Rather, he is invoking the general provision in Section 28-2-2 of the COEA, in which "[t]he legislature finds that the public is best protected when criminal offenders or ex-convicts are given the opportunity to secure employment or to engage in a lawful trade, occupation or profession and that barriers to such employment should be removed to make rehabilitation feasible."  N.M. Stat. Ann. § 28-2-2.  According to Plaintiff, this legislative finding is a clear mandate of public policy that can support a common-law claim for the tort of wrongful discharge against a private employer.

Plaintiff points to no published opinions by New Mexico's appellate courts which recognize such a claim for wrongful discharge against a private employer based on the legislative findings in the COEA.  In the absence of clear authority from the State's appellate courts that is directly on point, a federal district court sitting in diversity jurisdiction should be reluctant to expand the scope of New Mexico's common law of torts on its own initiative.

Nevertheless, I will further analyze Plaintiff's claim to determine whether its viability can be logically inferred from existing, well-established principles of New Mexico law.

Plaintiff correctly cites the general principle that "[t]he linchpin of a cause of action for retaliatory discharge is whether by discharging the complaining employee the employer violated a 'clear mandate of public policy.'" Shovelin v. Central N.M. Elec. Coop., Inc, 115 N.M. 293, 303, 850 P.2d 996, 1006 (1993) (quoting Vigil v. Arzola, 102 N.M. 682, 688, 699 P.2d 613, 619 (Ct.App.1983)). While such a "clear mandate of public policy sufficient to support a claim of retaliatory discharge may be gleaned from the enactments of the legislature," the New Mexico Supreme Court also has held that "not every expression of public policy will suffice to state a claim for retaliatory discharge." Id. Conversely, the tort of retaliatory discharge may be available in some cases even when the legislative enactment from which the mandate of public policy is gleaned "contains its own remedial scheme." Gandy v. Wal-Mart Stores, Inc., 117 N.M. 441, 444, 872 P.2d 859, 862 (1994).

For these reasons, the mere fact that the COEA contains a statement of public policy or a remedial scheme applicable to public employers and state regulators is not dispositive. Under New Mexico law, the Court also must look to the employer's intent, the specific acts or omissions of the employee which gave rise to the discharge, and the effect of the employee's discharge on the public policy in question. "Discharging an at-will employee is not in itself a violation of public policy. What is a violation of public policy is discharging an employee with the intent to subvert a clear mandate of public policy." Lihosit v. I & W, Inc., 121 N.M. 455, 459, 913 P.2d 262, 266 (Ct. App. 1996).

New Mexico courts have recognized the tort of "retaliatory discharge" as a narrow exception to the general rules applicable to at-will employment. For an at-will employee to recover under this tort, "he must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn." Chavez v. Manville Prods. Corp., 108 N.M. 643, 647, 777 P.2d 371, 375 (1989); see, e.g., Michaels v. Anglo Am. Auto Auctions, Inc., 117 N.M. 91, 94, 869 P.2d 279, 282 (1994) (concluding that an at-will employee stated a clam for retaliatory discharge where his employer allegedly retaliated against him for exercising his rights under New Mexico's Workers' Compensation Act).

According to Plaintiff's *Complaint*, the basis for Defendant's decision to terminate his employment was his prior felony conviction and the appearance of his name on New Mexico's sex-offenders list. Having a prior felony conviction that is reported on the State's sex-offenders list is not something that can be characterized as "an act [by an employee] that public policy has authorized or would encourage." Chavez, 108 N.M. at 647, 777 P.2d at 375. On the contrary, the New Mexico Legislature "has clearly enunciated a strong public policy against condoning criminal activity and in favor of uncovering and eradicating it." Garrity v. Overland Sheepskin Co., 121 N.M. 710, 714, 917 P.3d 1382, 1386 (1996). "'There is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens.'" Id. at 1387 (quoting Palmateer v. Int'l Harvester Co., 421 N.E.2d 876, 879-80 (Ill. 1981)).

Such a public policy also is evident in New Mexico's Sex Offender Registration and Notification Act (SORNA), N.M. Stat. Ann. §§ 29-11A-1 to -8 (Michie 2004). This statute contains legislative findings that "sex offenders pose a significant risk of recidivism" and that "the efforts of law enforcement agencies to protect their communities from sex offenders are impaired by the lack of information available concerning convicted sex offenders who live within the agencies' jurisdictions." Id. § 29-11A-2(A). These legislative findings form the basis for "SORNA's public access to information, active community notification, and internet website provisions." State v. Druktenis, 2004-NMCA-032, ¶¶ 18-23, 135 N.M. 223, 86 P.3d 150 (citing N.M. Stat. Ann. § 29-11A-5.1). Such notification provisions are not intended by the Legislature as a punishment for committing a sex offense; rather, they form part of a "a civil, remedial, regulatory, nonpunitive law" aimed at protecting the public. Id. ¶ 32.

The New Mexico Supreme Court has stated that "all provisions of a [statutory scheme], together with other statutes *in pari materia*, must be read together to ascertain legislative intent." Roth v. Thompson, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). Applying this principle in the context alleged here, I conclude that SORNA places significant limitations on the policy expressed in Section 28-2-2 of the COEA. In making efforts to encourage employment opportunities for criminal offenders and ex-convicts, the New Mexico Legislature did not intend to downplay the special risks posed by convicted sex offenders or to discourage private employers from using the information on the State's sex-offenders list to protect their communities. Allowing at-will employees to sue private

employers for using information about criminal convictions made public under SORNA in their employment decisions would provide such discouragement.

For these reasons, I conclude that the allegations in Plaintiff's *Complaint* are not legally sufficient to show that his discharge concerned "an act that public policy has authorized or would encourage," Chavez, 108 N.M. at 647, 777 P.2d at 375, or that Defendant's alleged use of information concerning his prior felony conviction or appearance on New Mexico's sex-offenders list would "subvert a clear mandate of public policy." Lihosit, 121 N.M. at 459, 913 P.2d at 266.  While I do not doubt that public policy would encourage everyone (including convicted felons and sex offenders) to have a job, such a generalized policy in favor of full employment cannot form the basis for Plaintiff's retaliatory-discharge claim without swallowing the rule of at-will employment to which this tort is supposed to be a narrow exception.

It follows that Plaintiff's *Complaint* fails to state a viable claim for the tort of wrongful discharge under the standard articulated in Fed. R. Civ. P. 12(b)(6), and Defendant's motion to dismiss this claim is granted.  As noted above, this ruling does not necessarily affect Plaintiff's contractual claims, and therefore this action remains pending with respect to those claims.

### III.   CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss Plaintiff's wrongful-termination claim alleged in Count 4 of the *Complaint*, as well as his claim for emotional distress or other tort damages for the breach of an implied covenant of good faith

and fair dealing alleged in Count 3 of the *Complaint*.  This action remains pending as to Plaintiff's claims for breach of express and implied contracts in Counts 1 and 2 of the *Complaint*, as well as Plaintiff's claim for contract damages arising from the breach of the implied covenant alleged in Count 3 of the *Complaint*.

**IT IS THEREFORE ORDERED** that Defendant *Dollar Tree's 12(b)(6) Motion and Supporting Memorandum to Dismiss Plaintiff's Implied Covenant of Good Faith and Fair Dealing and Wrongful Termination Claims* [Doc. 4] is **GRANTED** under the conditions specified above.

**SO ORDERED** this 21st day of December, 2005, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**